# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

V

CHRISTOPHER DORIAN HUMPHREY,

        Defendant-Appellee.

FOR PUBLICATION
September 15, 2015
9:10 a.m.

No. 320353
Wayne Circuit Court
LC No. 13-010073-FH

Before: WILDER, P.J., and OWENS and M. J. KELLY, JJ.

WILDER, P.J.

The prosecution appeals as of right a circuit court order granting defendant's motion to dismiss the charge against him of carrying a concealed weapon ("CCW"), MCL 750.227(2). On appeal, the prosecution argues that under the Michigan Supreme Court's interpretation of "firearm" under MCL 750.222(d) (providing the legal definition of "firearm" under Chapter XXXVII of the Michigan Penal Code), the inoperability of a pistol is not a valid affirmative defense to a CCW charge, and, therefore, the trial court erroneously dismissed defendant's CCW charge. We agree and reverse.

## I. FACTS AND PROCEDURAL HISTORY

At approximately midnight on January 7, 2012, Detroit Police Officer Johnny Strickland was patrolling the area of St. Marys Street and McNichols Road in Detroit, Michigan, in a fully marked police car, while accompanied by another officer. He observed defendant and another individual walking along the street, despite the availability of a pedestrian sidewalk, which was an offense for which Strickland was authorized to issue a ticket. The officers approached defendant in the police vehicle, and defendant looked in their direction. When the officers stopped and exited the car, defendant "immediately reached . . . toward his right pocket as if he was trying to reach into his pants." Strickland instructed defendant to place his hands in the air, but defendant fled when Strickland approached him. Strickland told defendant to stop, advised defendant that he was a police officer, and ran after defendant. After chasing defendant for less than a block, Strickland caught up with him and immediately detained him, at which time defendant attempted to reach into his right pants pocket again. After Strickland handcuffed defendant, he frisked him in the area where defendant had reached, feeling a handgun through defendant's pants. Defendant did not produce a valid concealed pistol license, and the weapon had not been visible before it was removed from defendant's pants because "he had on two pairs

-1-

of pants, [and] it was in the pants that [were] underneath the first pair." Strickland could not recall if he ever inspected the weapon to determine if it had been loaded or operable.

On November 11, 2013, the trial court entered an order requiring the Detroit Police Department to perform ballistics testing on the weapon seized from defendant in order "to determine whether the weapon is currently operable (i.e., capable of propelling a dangerous projective)." According to the laboratory report prepared by the Forensic Science Division of the Michigan State Police, dated February 5, 2012, "[t]he submitted firearm did not function in the condition it was received, [sic] due to a missing firing pin."

On January 6, 2014, defendant filed a motion to dismiss his CCW charge. Defendant argued that the trial court should dismiss the CCW charge because the Michigan State Police ballistics report indicated that the weapon seized from defendant "was missing a firing pin and, as a result, could not be easily made operable at the time," which demonstrated that there was insufficient evidence to support one of the critical elements of his CCW charge. In support of his position, defendant asserted that there previously was a split of authority regarding whether an inoperable weapon could give rise to a CCW charge, but that subsequent cases resolved the issue and indicated that "[a]n affirmative defense to the charge of carrying a concealed pistol can be made by the presentation of proof that the pistol in question would not fire and could not readily be made to fire a projectile." Accordingly, defendant argued that no reasonable trier of fact could find that the weapon recovered from defendant was operable and, therefore, the trial court should dismiss the CCW charge because the weapon did not constitute a firearm under MCL 750.227(2).

After a hearing on defendant's motion, the trial court ruled as follows:

Okay. I took an opportunity, I read [*People v Peals*, 476 Mich 636, 638; 720 NW2d 196 (2006)] as well as the other cases that are cited in the Criminal Jury Instruction 11.6 because I thought that they would be helpful. My main issue with [*Peals*] is that it makes it clear time and time again that it applies to felon[-]in[-]possession and felony[-]firearm.

I tend to agree with you[,] [prosecutor], that if there was a CCW charge within that particular case[,] it probably would have applied it. However, throughout it's [sic] holding it distinguishes between the CCW charges and felon[-]in[-]possession and felony[-]firearm. So I think this is a call that, for another court. I'm going to dismiss this case.

I think that ultimately the Court of Appeals or the Michigan Supreme Court has to clarify whether or not [their] new found opinion with respect to operability under firearms further extends to CCW. 'Cause I haven't seen anything in the case law saying that it doesn't. Other than the [*Peals*] case, which is very clearly [sic] applies to felony[-]firearm and felon[-]in[-]possession.

So you're probably right. And the Court's going to get there eventually. I just don't think that they've done it yet. And this might be the case to do it. So, I'm going to dismiss it.

-2-

Accordingly, on January 28, 2014, the trial court entered an order dismissing the CCW charge for the reasons stated on the record.

## II. STANDARDS OF REVIEW

This Court "review[s] for an abuse of discretion a trial court's decision on a motion to dismiss," *People v Stone*, 269 Mich App 240, 242; 712 NW2d 165 (2005) (citations omitted), which occurs "when [the trial court's] decision falls outside the range of principled outcomes," *People v Nicholson*, 297 Mich App 191, 196; 822 NW2d 284 (2012). However, this Court reviews de novo questions of law associated with a motion to dismiss a charge. *People v Owen*, 251 Mich App 76, 78; 649 NW2d 777 (2002); *People v Kevorkian*, 248 Mich App 373, 383; 639 NW2d 291 (2001). Additionally, "[q]uestions of statutory construction are reviewed de novo." *People v Campbell*, 289 Mich App 533, 535; 798 NW2d 514 (2010).

## III. FOR CHARGES BROUGHT UNDER CHAPTER XXXVII OF THE MICHIGAN PENAL CODE, THE OPERABILITY OF A PISTOL IS NOT RELEVANT

The prosecution charged defendant with violating MCL 750.227(2), which provides:

(2) A person shall not carry a pistol concealed on or about his or her person, or, whether concealed or otherwise, in a vehicle operated or occupied by the person, except in his or her dwelling house, place of business, or on other land possessed by the person, without a license to carry the pistol as provided by law and if licensed, shall not carry the pistol in a place or manner inconsistent with any restrictions upon such license.

At the time of the offense, MCL 750.222(e) defined the term "pistol"[1] as "a loaded or unloaded firearm that is 30 inches or less in length, or a loaded or unloaded firearm that by its construction and appearance conceals itself as a firearm."[2] Additionally, at the time of the offense, the term "firearm," which applied to all of Chapter XXXVII of the Michigan Penal Code, meant: "[A] weapon from which a dangerous projectile may be propelled by an explosive, or by gas or air. Firearm does not include a smooth bore rifle or handgun designed and manufactured exclusively for propelling by a spring, or by gas or air, BBs not exceeding .177 caliber." MCL 750.222(d).

---

[1] Under 2012 PA 242, MCL 750.222 was amended, effective January 1, 2013. Although the definition of "pistol" was changed slightly, to change the maximum length of a pistol from 30 inches to 26 inches, the definition of "firearm" remained the same. However, MCL 750.222, including the definition of "firearm," was recently amended under 2015 PA 26, effective July 1, 2015, and 2015 PA 28, effective August 10, 2015. "[A] statute is presumed to operate prospectively unless [a] contrary intent is clearly manifested," but "an exception to this general rule is recognized if a statute is remedial or procedural in nature." *People v Conyer*, 281 Mich App 526, 529; 762 NW2d 198 (2008) (quotation marks and citation omitted).

[2] The definition of pistol found in MCL 750.222(e) is applicable to all the crimes defined in Chapter XXXVII of the Michigan Penal Code, i.e., MCL 750.222 through MCL 750.239a.

As recognized in *People v Brown*, 249 Mich App 382, 384; 642 NW2d 382 (2002), "this Court . . . accorded various meanings to the statutory term 'firearm,' depending on the specific offense with which the defendant has been charged." Thus, while an inoperable weapon was found by this Court to qualify as a "firearm" for purposes of MCL 750.227b [possession of a firearm during the commission of a felony ("felony-firearm")], and MCL 750.224f [felon in possession of a firearm ("felon-in-possession")], *Brown*, 249 Mich App at 384-385, this Court has also held that the fact that a pistol was inoperable afforded a defendant an affirmative defense to a CCW charge:

> This Court has . . . held that a pistol, as defined under the concealed weapons statute, must be operable. *People v Gardner*, 194 Mich App 652; 487 NW2d 515 (1992). That is, the pistol must be capable of propelling the requisite-sized dangerous projectile or of being altered to do so within a reasonably short time. *Id.*, p 654; *People v Huizenga*, 176 Mich App 800, 806; 439 NW2d 922 (1989). An affirmative defense to a charge of carrying a concealed pistol can be made by the presentation of proof that the pistol would not fire and could not readily be made to fire. *Gardner, supra.* [*People v Parr*, 197 Mich App 41, 45; 494 NW2d 768 (1992).]

Consistent with this case law, subsequent opinions issued by this Court, and both the former and current versions of the model criminal jury instructions, recognized that an inoperable handgun does not constitute a "firearm" for purposes of the CCW statute, and that a defendant is not guilty of CCW when the gun is completely unusable and cannot be easily made operable. See, e.g., *Brown*, 249 Mich App at 384; M Crim JI 11.6; CJI2d 11.6.

However, in *Peals*, 476 Mich at 638, the Michigan Supreme Court considered whether the defendant possessed a "firearm," as defined in MCL 750.222(d), and, therefore, was properly convicted of felon-in-possession, MCL 750.224f(1), and felony-firearm, MCL 750.227b. The Supreme Court held:

> [T]he text of the statutory definition indicates that a weapon is a firearm if it is the type of weapon that was designed or intended to propel a dangerous projectile by an explosive, gas, or air. The definition describes the category of weapons that constitute a "firearm," but it does not prescribe a requirement that the weapon be "operable" or "reasonably or readily repairable." In other words, the design and construction of the weapon, rather than its state of operability, are relevant in determining whether it is a "firearm." [*Id.* at 638.]

Thus, the Supreme Court concluded, "the statute requires only that the weapon be of a type that is designed or intended to propel a dangerous projectile." *Id.* at 642. The Supreme Court noted in its analysis that this Court has attributed different meanings to the term "firearm," depending on the charged offense:

> [T]he Court of Appeals has held, after [*People v*] *Hill*, [433 Mich 464; 446 NW2d 140 (1989),] that proof of operability is not required to establish the offense of felon in possession of a firearm. In [*Brown*, 249 Mich App 382], *the Court of Appeals noted that various meanings had been accorded to the term "firearm,"*

-4-

*depending on the offense with which the defendant had been charged.* In the context of the concealed weapons statute, MCL 750.227, the Court of Appeals had held that an inoperable handgun was not a "firearm." See [*Parr*, 197 Mich App at 45;] [*Gardner*, 194 Mich App at 654;] and [*Huizenga*, 176 Mich App at 804-805]. But in the context of the felony-firearm statute, the *Brown* Court noted that Court of Appeals case law does not require proof of operability. See [*People v Thompson*, 189 Mich App 85; 472 NW2d 11 (1991)]; [*People v Garrett*, 161 Mich App 649; 411 NW2d 812 (1987)]; and [*People v Poindexter*, 138 Mich App 322; 361 NW2d 346 (1984)]. The *Brown* Court concluded "that the *Thompson* analysis, first applied to felony-firearm cases, should also be applied to felon[-]in[-]possession cases." *Brown*, 249 Mich App at 384-385. [*Peals*, 476 Mich at 647-648 (emphasis added).]

Additionally, although an apparent secondary consideration, the Supreme Court also noted that its interpretation of the statutory definition was consistent with this Court's existing case law regarding the specific offenses at issue in that case:

As discussed, we believe the statutory definition of "firearm" is clear. MCL 750.222(d) plainly provides that a weapon is a firearm if it is the type of weapon that propels dangerous projectiles by an explosive or by gas or air. Moreover, as noted earlier, the existing Court of Appeals case law provides that inoperability is not a defense to either felony-firearm or felon in possession of a firearm. [*Id*.]

Although the Supreme Court made no specific pronouncement that its interpretation of the term "firearm" under MCL 750.222(d) was applicable in all firearms cases, nevertheless, the clear implication is that, given the plain language of the statute, the Supreme Court's construction of the term "firearm" is the only viable interpretation of the term as it concerns all the crimes defined in MCL 750.222 through MCL 750.239a. *Id*. at 655; see *People v Lewis*, 302 Mich App 338, 341-342; 839 NW2d 37 (2013) ("When the statutory language is plain and unambiguous, the Legislature's intent is clearly expressed, and judicial construction is neither permitted nor required."). Thus, in the instant case, the trial court was bound by the Michigan Supreme Court's pronouncement in *Peals* that the definition of "firearm" in MCL 750.222(d) was "clear" and "plain[]," *Peals*, 476 Mich at 655, and that "the design and construction of the weapon, rather than its state of operability, are relevant in determining whether [the weapon] is a 'firearm,' " *id*. at 638. This Court is also bound by *Peals*, and we hold that *Peals* overruled *Gardner's* holding that the inoperability of a pistol is an affirmative defense to a CCW charge. *Gardner*, 194 Mich App at 654-655.

## IV. CONCLUSION

"[A] trial court's misapplication or misunderstanding of the law in reaching its decision . . . may constitute an abuse of discretion." *People v Cress*, 250 Mich App 110, 149; 645 NW2d 669 (2002), rev'd on other grounds 468 Mich 678 (2003). Here, the trial court abused its discretion by granting defendant's motion to dismiss the CCW charge because, under *Peals*, the

operability of a firearm is not relevant to firearms offenses under Chapter XXXVII of the Michigan Penal Code, and the inoperability of a pistol is no longer a valid affirmative defense to a CCW charge.[3]

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kurtis T. Wilder
/s/ Donald S. Owens
/s/ Michael J. Kelly

---

[3] The new definition of "firearm" under 2015 PA 28 supports our conclusion that operability is no longer a defense to a CCW charge. Under the new definition, a " '[f]irearm' means any weapon which will, *is designed to*, or may readily be converted to expel a projectile by action of an explosive." MCL 750.222(e) (emphasis added). This definition, like the former definition interpreted by the Michigan Supreme Court in *Peals*, "describes the category of weapons that constitute a 'firearm,' but . . . does not prescribe a requirement that the weapon be 'operable' or 'reasonably or readily repairable,' and indicates that "*the design* and construction of the weapon . . . are relevant in determining whether it is a 'firearm.' " *Peals*, 476 Mich at 638. Thus, we conclude that the reasoning employed in *Peals* is still viable under the amended definition. See also *id*. at 642 ("[T]he statute requires only that the weapon be of a type that is *designed* or intended to propel a dangerous projectile." [Emphasis added.]).