*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CARLTON PAUL WILLIAMS,

Defendant-Appellant.

UNPUBLISHED
May 7, 2020

No. 345585
Oakland Circuit Court
LC No. 2018-266150-FC

Before: M. J. KELLY, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of carjacking, MCL 750.529a; three counts of possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b; armed robbery, MCL 750.529; and being a felon in possession of a firearm, MCL 750.224f. The trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to 25 to 50 years' imprisonment for his carjacking and armed robbery convictions, five years' imprisonment for each count of felony-firearm conviction, second offense, and 58 months to 30 years' imprisonment for the felon-in-possession conviction. We affirm.

On October 17, 2017, Moroch Kouza went to Car Stop Automotive (Car Stop) on Coolidge Highway in Oak Park, Michigan for an oil change. After the oil change was completed Kouza sat in her car and checked her email when a man approached her car and opened the front driver's side door. The man pointed a silver revolver at Kouza and said, "You know what this is." Kouza attempted to push the door open wider to flee and the man said, "No, no, no, you got to get back, move – get back into the car." Despite this demand, Kouza got out of the car and fled. The man drove away in Kouza's car with her cell phone inside.

Because Kouza's cell phone had a GPS tracking application, she was able to track the location of her cell phone and, thus, her car. Kouza informed the police where her cell phone appeared to be and they quickly located Kouza's car. Defendant's left palm print was found on the driver's side exterior door handle of Kouza's car.

Two days later, Oak Park Police searched defendant's bedroom and found male clothing, documents addressed to defendant, and a .38 special blue steel loaded revolver in the closet.

-1-

Additionally, the police were able to create a map tracking the location of defendant's cell phone, based on his cell phone records, starting from the time of the robbery and carjacking at the Car Stop to the location where Kouza's car was located after the carjacking, and then to defendant's bedroom at his sister's house. Defendant was charged and convicted as indicated above.

On appeal, defendant contends that the evidence was insufficient to find him guilty of the three counts of felony-firearm and the single count of felon-in-possession. We disagree.

This Court reviews a challenge to the sufficiency of the evidence de novo. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). To determine whether there was sufficient evidence presented to support a conviction, this Court considers whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). This standard of review is deferential and the evidence is to be viewed in the light most favorable to the prosecution. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Furthermore, circumstantial evidence and all reasonable inferences drawn therefrom can constitute sufficient proof of the elements of a crime. *Id*.

The elements of felon-in-possession are: "(1) the defendant is a felon who possessed a firearm (2) before his right to do so was formerly restored." MCL 750.224f; *People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016). "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Muhammad*, 326 Mich App 40, 61; 931 NW2d 20 (2018). Possession can be established through direct or circumstantial evidence and is a factual question for the factfinder. *People v Flick*, 487 Mich 1, 14; 790 NW2d 295 (2010) citing *People v Hill*, 433 Mich 464, 469; 446 NW2d 140 (1989). Additionally, a firearm is a weapon "that is designed or intended to propel a dangerous projectile." *People v Humphrey*, 312 Mich App 309, 316; 877 NW2d 770 (2015), citing *People v Peals*, 476 Mich 636, 642; 720 NW2d 196 (2006).

Defendant's argument concerning the sufficiency of the evidence is based upon the discrepancy between Kouza's statement to the police that the revolver the carjacker pointed at her was silver, and the police having recovered a blue steel revolver from defendant's bedroom closet. Defendant contends that it is "pure conjecture to assume that the blue steel [revolver] was used in the offense."

While there is, indeed, a discrepancy regarding the color of the revolver that Kouza described and the revolver found in defendant's bedroom, sufficient evidence was presented to support the jury's finding that defendant possessed a firearm during the commission of the robbery, carjacking, and felon-in-possession. Kouza initially described the revolver as silver in her statement to the police. Kouza then explained at trial also that she was not certain about the color of the gun because she was more concerned about the gun being pointed at her and with saving her life than the gun's aesthetic. Kouza testified that her car was running when the man opened her car door holding a gun. When she looked up at the man, he said, "You know what this is." Since Kouza's car was still running, she could have simply driven off. However, the fact that Kouza pushed past defendant to flee, despite his demands to stay in the car, supports her testimony that defendant brandished a weapon. Moreover, while Kouza may not have accurately described the color of the revolver, she identified the type of weapon as a revolver, which was the same type of gun recovered from the defendant's bedroom. Thus, Kouza's testimony, and the reasonable

-2-

inferences therefrom, support the jury's finding that defendant possessed a firearm at the time of the robbery and carjacking.

In addition to Kouza's testimony, the prosecution presented direct and circumstantial evidence that defendant used a gun to rob and steal Kouza's car. The palm print developed from the exterior driver's side door handle of Kouza's car matched defendant's left palm print. Evidence was also presented that defendant did not previously know Kouza, have permission to use her car, or have any connection to the Car Stop that would support an alternative rationale for why his palm print was on Kouza's car. Additionally, two days after the robbery and carjacking, the police recovered a blue steel loaded revolver from defendant's bedroom closet. Detective Taylor also explained that blue steel is a dark color that has more shine than black. Thus, substantial corroborating circumstantial evidence existed to support Kouza's testimony and for a reasonable jury to infer that defendant possessed a firearm during the robbery and carjacking of Kouza, which account for two of the three felony-firearm convictions.

Defendant also argues that insufficient evidence was presented to support his conviction because the prosecution merely assumed that the revolver was not a "facsimile." However, when the prosecution introduced the revolver recovered from defendant's bedroom into evidence, an Oak Park detective specifically informed the court that the revolver was unloaded and secure. This suggests that the recovered revolver was real.

With respect to the felon-in-possession conviction and the third felony-firearm conviction, detectives located the revolver in a shoebox in the closet of defendant's bedroom. While the detectives did not have personal knowledge of who may have access to defendant's bedroom, defendant's sister escorted the detectives to the bedroom after they disclosed to her why they were at her home. The detectives also found paystubs and court documents addressed to defendant in the bedroom along with male clothing. And, defendant did not object to the assertion that the bedroom where the revolver was found was his. Defendant was previously convicted of armed robbery, MCL 750.227b, in July 2010. Thus, the evidence supports defendant's felon-in-possession conviction based on his mere possession of the blue steel revolver and also supports the third felony-firearm conviction.

In a supplemental brief, defendant next argues that his 25-year mandatory minimum sentence is disproportionate and violates the Constitutional prohibitions against cruel and/or unusual punishment set forth in Const 1963, art 1, § 16 and US Const, Am VIII. We disagree.

Matters of constitutional and statutory interpretation are reviewed de novo on appeal. *People v Skinner*, 502 Mich 89, 99; 917 NW2d 292 (2018). We review the reasonableness of a sentence under the abuse of discretion standard, which occurs when a trial court's decision falls outside the range of reasonable and principled outcomes. *People v Blanton*, 317 Mich App 107, 117; 894 NW2d 613 (2016). However, "[t]his Court is required to review for reasonableness only those sentences that depart from the range recommended by the statutory guidelines." *People v Anderson*, 322 Mich App 622, 636; 912 NW2d 607 (2018), citing *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). "If a statute mandates a minimum sentence . . . , the court shall impose sentence in accordance with that statute," and imposing such a mandatory minimum sentence is not considered a guidelines departure." MCL 769.34(2)(a). An imposed sentence

constitutes an abuse of discretion if it violates the principle of proportionality. *People v Steanhouse*, 500 Mich 453, 475; 902 NW2d 327 (2017).

Carjacking is a felony punishable by imprisonment "for life or for any term of years." MCL 750.529a. Armed robbery is also a felony punishable by imprisonment for life or for any term of years. MCL 750.529. Defendant's sentencing guidelines in these matters were calculated to be 126-420 months' imprisonment. However, defendant is a fourth habitual offender. As a result, he is subject to the following:

> If the subsequent felony is a serious crime or a conspiracy to commit a serious crime, and 1 or more of the prior felony convictions are listed prior felonies, the court shall sentence the person to imprisonment for not less than 25 years. [MCL 769.12]

Defendant admits that his prior convictions and current conviction satisfy the requirements for sentencing him as a fourth habitual offender under MCL 769.12. His mandatory minimum sentence under that statute is legislatively mandated. "Legislatively mandated sentences are presumptively proportional and presumptively valid." *People v Brown*, 294 Mich App 377, 390; 811 NW2d 531 (2011). "In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013) (citation omitted).

On appeal, defendant does not identify any unusual circumstances that would make his 25-year minimum sentence disproportionate. Defendant argues that he is only 27 years old and that of his lengthy criminal history, only one of the crimes was violent (a prior armed robbery). He also points out that all of his prior felony convictions occurred when he was 20 years old or younger, and that no one was physically harmed in the instant matter. What defendant omits, however, is the fact that he was in prison for armed robbery from the time he was 19 until he was released on parole on August 2, 2016—just before his 26th birthday. He was thus physically prevented from committing crimes such as armed robbery and carjacking for the vast majority of his twenties. In addition, defendant was on parole at the time of the instant offense and had been out of prison only a little over a year when he again committed armed robbery as well as carjacking. And, while the victim was not physically hurt in this matter, defendant tried to get her to stay in the car while pointing a gun at her. The victim fled despite defendant's orders to stay in the car. Thus, the lack of physical harm may have been due entirely to the victim's action in fleeing, not because of a conscious decision on defendant's part not to hurt her.

Defendant compares his sentence to the 20-year mandatory minimum sentence the Supreme Court struck down for a first-time offense of selling *any* amount of marijuana. See *People v Lorentzen*, 387 Mich 167; 194 NW2d 827 (1972). The nonviolent crime of selling of any quantity of marijuana, however, does not compare to the violent crimes of carjacking and armed robbery. And, defendant was not a first-time offender. Because defendant has failed to present any unusual circumstances that would render the 25-year minimum sentence disproportionate, his claim of a disproportionate sentence fails.

Defendant's claim that his sentence constitutes cruel or unusual punishment also fails.  The United States Constitution prohibits cruel *and* unusual punishment, U.S. Const. Am. VIII, while the Michigan Constitution prohibits cruel *or* unusual punishment, Const. 1963, art. 1, § 16. *People v Costner*, 309 Mich App 220, 232; 870 NW2d 582  (2015).  Thus, "[i]f a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011) (quotation marks and citation omitted).  A sentence that is proportionate, however, does not constitute cruel or unusual punishment.  *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008).

As previously discussed, defendant has not established that his 25-year minimum sentence is disproportionate.  His sentence thus does not constitute cruel of unusual punishment.  *Id*. Defendant relies upon *People v Bullock*, 440 Mich 15; 485 NW2d 866 (1992) to nevertheless argue that his sentence was cruel and/or unusual.  In *Bullock*, our Supreme Court considered whether "Michigan's mandatory penalty of life in prison without possibility of parole, for possession of 650 grams or more of any mixture containing cocaine, is 'cruel or unusual' under our state constitution." *Id*. at 21.  The *Bullock* Court concluded that

> the penalty at issue here is so grossly disproportionate as to be "cruel or unusual."  The penalty is imposed for mere possession of cocaine, without any proof of intent to sell or distribute.  The penalty would apply to a teenage first offender who acted merely as a courier.  Indeed, on the basis of the information before this Court, it appears that prior to the offense giving rise to this case, defendant Bullock, a forty-eight-year-old grandmother, had never been convicted of any serious crime and had held a steady job as an autoworker for sixteen years. [Id. at 37-38].

In stark contrast, defendant here was convicted of violent crimes, not "mere" possession of a controlled substance.  He was not a first offender and, in fact, it was his status as a habitual *fourth time* offender, that gave rise to his mandatory minimum 25-year sentence.  MCL 769.12 applies only to fourth habitual offenders and thus protects against the possibility hypothesized by the *Bullock* court of an offender with no criminal history being sentenced to the mandatory minimum sentence.  In sum, defendant's arguments and reasons do not constitute unusual circumstances sufficient to overcome the presumption of proportionality.  "Because defendant has not overcome the presumption of proportionality, and because a proportionate sentence is not cruel or unusual, defendant has not established a constitutional violation." *Powell*, 278 Mich App at 324.

Affirmed.


/s/ Michael J. Kelly
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto